# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JOHN RODZ, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-783 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| NORTHLAND GROUP, LLC, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff John Rodz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from an agreement or series of agreements to defer payment.

6. Defendant Northland Group, LLC ("Northland") is a debt collection agency with its principal place of business located at 7831 Glenroy Road, Suite 250, Edina, Minnesota 55439. It was formerly known as "Northland Group, Inc."

7. Northland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Northland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Northland is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about August 29, 2017, Northland mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt identified in Exhibit A was an alleged personal consumer credit card account, allegedly owed to Capital One, and used only for personal, family, or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by Northland to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A was the first written communication Northland mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

2

15. <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

16. <u>Exhibit A</u> also states the following:

> Northland Reference #: ▉5249
> Account Balance: $623.98
> Settlement Offer: $530.40
> Client/Creditor: CAPITAL ONE BANK (USA), N.A.
> Original Account #: ************2395

<u>Exhibit A</u>.

17. <u>Exhibit A</u> also contains the following text:

> On 08/25/17 CAPITAL ONE BANK (USA), N.A. authorized Northland Group to collect this debt on their behalf. We are willing to reduce your balance by offering you a settlement. Please note, we are not obligated to renew this offer. Upon receipt and clearance of $530.40, a letter will be sent confirming that the above referenced account has been resolved. This offer does not affect your rights set forth below.

<u>Exhibit A</u>.

18. <u>Exhibit A</u> also contains the following:

> **Itemization of Debt:**
> Charge-Off Date: 7/22/17
> Total Amount Due as of Charge-Off: $623.98
>
> Total Amount of Interest Accrued Since Charge-Off: $0.00
> Total Amount of Non-Interest Fees Since Charge-Off: $0.00
> Total of Payments Made Since Charge-Off: $0.00

<u>Exhibit A</u>.

19. <u>Exhibit A</u> is confusing and misleading to the unsophisticated consumer.

20. On the face of <u>Exhibit A</u>, it is impossible to determine the amount that Northland is attempting to collect.

3

21.     Exhibit A states that the "Account Balance" of the account is $623.98 and offers that Northland is "willing to reduce your balance by offering you a settlement" in the amount of $530.40.

22.     However, Exhibit A states that Northland is "not obligated to renew this offer," and Exhibit A is confusing on its face to whether the balance of the account is increasing as a result of interest and non-interest fees.

23.     The unsophisticated consumer be confused and misled as to whether the references to "Interest Accrued Since Charge-Off" and "Non-Interest Fees Since Charge-Off" meant that the account was bearing interest and other fees, and thus may actually be greater than the "Account Balance," stated in Exhibit A by the time the consumer actually received Exhibit A. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

24.     Exhibit A obliquely itemizes "Total Amount of Interest Accrued Since Charge-Off" and the "Total Amount of Non-Interest Fees Since Charge-Off" in the amounts of "$0.00."

25.     If the account is not actually bearing interest and fees, the oblique and ambiguous references to "Interest" and "Non-Interest Fees" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest. If the account is bearing interest, the failure to clearly disclose that interest is accruing is confusing and misleading. *See Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) (quoting *Chuway*, 362 F.3d at 949).

26.     The confusion is exacerbated because, according to Exhibit A, the debt charged off just one month before Northland mailed Exhibit A. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("A credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days.").

4

27. According to Exhibit A, The amount of the debt at the time of charge-off was $623.98, and Capital One did not charge interest or non-interest fees during the first month after charge-off.

28. However, a creditor does not waive its right to interest or fees simply because it does not impose these charges during the first month after an account charges off. It is not uncommon for third-party debt collectors like Northland to begin to add interest after the debt has been assigned for collection purposes. *E.g., Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017) ("A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest when Ruge's credit card agreement allowed the bank to delay enforcing its rights without waiver ….").

29. The unsophisticated consumer understands that credit card debts may accrue interest and fees, and the references to interest and fees would undoubtedly make the consumer wonder whether his account was bearing interest and fees. *See Deporter v. Credit Bureau of Carbon County*, 2015 U.S. Dist. LEXIS 55345, at *15-16 (D. Colo. Apr. 28, 2015) (collecting cases and explaining that, in the context of credit card debts, the FDCPA does not place an "affirmative duty to disclose the accrual of interest because 'even the most unsophisticated consumer would understand that credit card debt accrues interest.'").

30. Exhibit A fails to state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether Northland was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

31. The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be

5

> explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one. On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

32. In the absence of an affirmative statement that the account was (or was not) bearing interest and non-interest fees, the ambiguous references to interest and non-interest fees "accrued since charge-off" could imply that interest and fees were accruing.

33. Upon information and belief, the account is not actually bearing interest or fees.

34. The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

35. The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous. Had Exhibit A simply stated that interest was not accruing, or stated that the interest *rate* was zero, it would not have engendered such gratuitous and unnecessary confusion. *See Duarte v. General Revenue Corp.*, 2017 U.S. Dist. LEXIS 188441, at *7-9 (N.D. Ill. Nov. 15, 2017) ("Clearly, a statement that the interest rate is zero cannot possibly be a threat to charge interest. To the contrary, it is more a concession that interest can't and won't be charged. In contrast, a cost balance of zero could imply future cost charges.").

36. The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

6

37. The confusion is exacerbated because <u>Exhibit A</u> contains a settlement offer without an expiration date, but expressly informs the consumer that Northland is "not obligated to renew this offer."

38. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable – rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 2018 U.S. App. LEXIS 1094, at \*17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at \*13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

39. The statement that the debt collector is "not obligated to renew this offer" was created specifically for cases where a debt collection letter stated a settlement with a specified expiration date. *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007). The language is confusing and misleading as to when payment would resolve the account without a date certain. *Al v. Van Ru Credit Corp.*, No. 17-CV-1738-JPS, 2018 U.S. Dist. LEXIS

70321 (E.D. Wis. Apr. 26, 2018). The unsophisticated consumer would understand that the settlement offer would "expire" if the balance increased as a result of accruing interest and fees, and that Northland may (or may not) renew the offer at that time. *Id.*

40. In *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016), the Seventh Circuit explained its decision in *Chuway*, noting that the problem was that "the reference to obtaining 'the most current balance information' implied that the consumer might actually have owed some unspecified larger amount."

41. As in *Chuway*, the unsophisticated consumer receiving Exhibit A would wonder whether interest and fees were accruing on the account and, if so, whether Northland was actually attempting to collect these additional amounts. Merely stating the amount of the debt does not comply if the letter contains ambiguous representations that the balance may, in fact, be increasing. *Chuway*, 362 F.3d at 948 ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it."); *see also, Janetos*, 825 F.3d at 323 ("Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.").

42. Moreover, the unsophisticated consumer would be confused by the nebulous reference to "non-interest fees" and would have no idea what those fees are, potentially could be, or whether they are legitimate.

43. The unsophisticated consumer would understand the reference to "non-interest fees" to be a reference to late fees and collection fees, neither of which could be added to Plaintiff's account as of the date of Exhibit A.

8

44. Upon information and belief, Capital One had accelerated the balance of Plaintiff's account as of the date of Exhibit A and would not reinstate the account upon payment of past due installments. By accelerating the account, Capital One waived its right to late fees. *E.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated."); *see also, Home Loan Inv. Bank v. Goodness & Mercy, Inc.*, 2012 U.S. Dist. LEXIS 46256, at *17 (E.D.N.Y. Mar. 30, 2012) ("The basis for this general rule against awarding post-acceleration late charges is that it is 'inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own right under the note to impose monthly late charges.'") (citing New York law).

45. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

46. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

47. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

48. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

9

no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

49. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

50. Because credit card transactions are consumer credit transactions, Exhibit A, with its nebulous statement about "Non-Interest Fees," falsely states or implies that Northland has a right to add collection fees to the debt.

51. Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit the creditor or the debt collector to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

52. Moreover, Northland could not add any collection fees to Plaintiff's account.

53. Plaintiff was confused and misled by Exhibit A.

54. The unsophisticated consumer would be confused and misled by Exhibit A.

55. Plaintiff had to spend time and money investigating Exhibit A.

56. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

*The FDCPA*

57.  The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

11

statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

58. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

60. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

12

61. 15 U.S.C. § 1692e(5) specifically prohibits the "the threat to take any action that cannot legally be taken or that is not intended to be taken."

62. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

63. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

64. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

65. 15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

66. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

67. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

68. The Seventh Circuit explained in *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009), that a debt collector that uses gratuitous and confusing language bears the burden of explaining why that language was used and justifying its inclusion.

### *The WCA*

69. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

70. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

71. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

14

Case 2:18-cv-00783-NJ    Filed 05/22/18    Page 14 of 18    Document 1

72. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

73. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

74. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

75. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

76. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

77. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

78. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

79. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Exhibit A states the "Account Balance" of the debt is $623.98, but also contains vague and ambiguous references to post-charge-off interest and fees.

82. Exhibit A fails to state the amount of the debt in a non-confusing manner. It is unclear whether the debt collector is attempting to collect interest or fees on the account.

83. Exhibit A impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

84. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. Exhibit A states the "Account Balance" of the debt is $623.98, but also contains vague and ambiguous references to post-charge-off interest and fees.

87. Exhibit A fails to state the amount of the debt in a non-confusing manner. It is unclear whether the debt collector is attempting to collect interest or fees on the account.

88. <u>Exhibit A</u> impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

89. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

90. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint, (c) seeking to collect a debt for personal, family, or household purposes, (d) to Capital One, (e) where the letter in the form of <u>Exhibit A</u> was mailed between May 22, 2017 and May 22, 2018, inclusive, (f) and was not returned by the postal service.

91. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

92. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

93. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  May 22, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com